UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CATHY L. LUGINBUHL,

       Plaintiff,

v.                                      Case No. 1:18-cv-1364

                                      Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review

of a final decision of the Commissioner of Social Security Administration (Commissioner) which

denied her application for disability insurance benefits (DIB), disabled widow's benefits (DWB),

and supplemental security income (SSI).

At the outset of her decision, the administrative law judge (ALJ) set forth the issues

to be decided:

> The issue is whether the claimant is disabled under sections 216(i), 223(d),
> 202(e), and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the
> inability to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment or combination of impairments that
> can be expected to result in death or that has lasted or can be expected to last for a
> continuous period of not less than 12 months.

> With respect to the claim for a period of disability and disability insurance
> benefits, there is an additional issue whether the insured status requirements of
> sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings
> record shows that the claimant has acquired sufficient quarters of coverage to
> remain insured through December 31, 2018. Thus, the claimant must establish

1

disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

Other issues are whether the claimant is the widow of the deceased worker, has attained the age of 50, is unmarried (unless one of the exceptions in 20 CFR 404.335(e) apply), and has a disability that began before the end of the prescribed period. The prescribed period ends with the month before the month in which the claimant attains age 60, or, if earlier, either 7 years after the worker's death or 7 years after the widow was last entitled to survivor's benefits, whichever is later.

In this case, the claimant's prescribed period began on October 26, 2008, the date the wage earner died. Therefore, the claimant must establish that her disability began on or before October 31, 2015 in order to be entitled to a disabled widow's benefits.

PageID.36-37.

Plaintiff alleged a disability onset date of December 17, 2013. PageID.36. Plaintiff identified her disabling conditions as major depression, essential hypertension (benign), asthma, osteoarthritis localized (primary-foot), urticaria allergic, disorders of bursae and tendions in shoulder region, sciatica, osteoarthrosis localized (primary – involving pelvic region), myalgia, and degeneration of lumbar intervertebral disc. PageID.439. Prior to applying for benefits, plaintiff obtained at least a high school education and had past employment as an assistant manager, head cashier, deli clerk, salesperson, general office clerk, cashier, and retail manager. PageID.54-55. Plaintiff was found not disabled in an ALJ's decision entered on June 7, 2016. PageID.211-224. However, the Appeals Council remanded the matter for further proceedings. PageID.231-232. On remand, plaintiff had an administrative hearing before a different ALJ. PageID.36, 85-125. The ALJ reviewed plaintiff's application de novo and entered a written decision denying benefits on May 1, 2018. PageID.36-57. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step

analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations

caused by her impairments and the fact that she is precluded from performing her past relevant

work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir.

2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a

significant number of jobs in the economy that accommodate the claimant's residual functional

capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis*

*v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Prior to commencing the sequential analysis, the ALJ made preliminary findings:

that plaintiff is the unmarried widow of the deceased insured worker (Richard Erwin Luginbuhl);

that she has attained the age of 50; that she met the non-disability requirements for DWB; and that

the prescribed period applicable to plaintiff's claim ended on October 31, 2015. PageID.39.

Plaintiff's claim failed at the fourth step of the evaluation. At the first step, the ALJ

found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of

December 17, 2013, and that she met the insured status requirements of the Social Security Act

through December 31, 2018. PageID.39. At the second step, the ALJ found that plaintiff had

severe impairments of: chronic obstructive pulmonary disease (COPD); asthma; hiatal hernia in

combination with gastro esophageal reflux disease (GERD); degenerative disk disease of the

lumbar spine; obesity; obsessive compulsive and excoriation disorders; persistent depressive

disorder; and anxiety. PageID.39. At the third step, the found that plaintiff did not have an

impairment or combination of impairments that met or equaled the requirements of the Listing of

Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.41.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that
> the claimant has the residual functional capacity to perform light work as defined
> in 20 CFR 404.1567(b) and 416.967(b), except: she can lift and/or carry 10 pounds
> frequently and up to 20 pounds occasionally. She is able to stand or walk for 8 hours
> and sit for 8 hours during a normal 8-hour workday. She should be able to change
> position for 1 to 2 minutes after every 30 minutes of continuous sitting, standing or
> walking, while remaining on task. She uses a cane for ambulation. She can
> occasionally climb ramps and stairs. She can never climb ladders, ropes or
> scaffolds. She can frequently balance, as that term is defined in the DOT. She can
> occasionally stoop, kneel, crouch and crawl She can never be exposed to dangerous
> machinery or hazardous heights. She can occasionally be exposed to atmospheric
> conditions, humidity and extreme heat, but never in excessive amounts. In addition
> to normal breaks, she may be off task 5% of the workday.

PageID.44-45. The ALJ also found that plaintiff could perform her past relevant work as a

salesperson, because this work did not require the performance of work-related activities precluded

by her residual functional capacity (RFC). PageID.54. The ALJ noted that the vocational expert

(VE) classified that position as light exertional work (as described in the Dictionary of

Occupational Titles), but actually performed by plaintiff at the medium exertional level. PageID.54.

Although plaintiff was found disabled at step four, the ALJ also made alternative findings under step 5, that plaintiff could perform a significant number of unskilled jobs in the national economy. PageID.56-57. Specifically, the ALJ found that plaintiff could perform the requirements of work such as personnel clerk (65,000 jobs) (sedentary work), telemarketer (125,000 jobs) (sedentary work), order clerk (150,000 jobs) (sedentary work), customer complaint clerk (175,000 jobs) (sedentary work), information clerk (80,000 jobs) (light work), mail clerk (20,000 jobs) (light work), and counter clerk (45,000 jobs) (light work). PageID.55-57. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from December 9, 2010 (the alleged onset date) through May 25, 2018 (the date of the decision). PageID.62-63.

Accordingly, the ALJ found that plaintiff has not been under a disability, as defined in the Social Security Act, from December 17, 2013 (the alleged onset date) through May 1, 2018 (the date of the decision). PageID.57.

### III. DISCUSSION

Plaintiff set forth three issues on appeal:

### A. The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating physician.

Plaintiff contends that the ALJ failed to properly consider the November 4, 2015 opinion of her treating physician, Boyd Manges, M.D., with respect to her physical limitations. PageID.644-645, 824.[1] A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.

---

[1] The ALJ refers to this opinion as Exhibit 8F.

2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ addressed Dr. Manges opinion as follows:

> In November 2015, Dr. Manges completed a physical work related activities opinion on the claimant's behalf (8F). Dr. Manges opined that the claimant could occasionally lift and carry 10 lbs. and less than 10 lbs. on a frequent basis. Further, he opined that she could stand and walk for about 3 hours and could sit for less than 2 hours during an 8-hour workday. He said the claimant could sit for 30 minutes, stand for 10 minutes before changing position, and must walk for 5 minutes every 15 minutes. He said she requires the opportunity to shift at will from sitting or standing/walking and to lie down at "unpredictable intervals" during an 8-hour working shift. Dr. Manges further opined that the claimant could occasionally twist, stoop, crouch, and climb stairs or ladders and that her reaching, pushing and

pulling were affected by shoulder pain. Moreover, he said she should avoid concentrated exposure to extreme cold and extreme heat. He said she should avoid even moderate exposure to high humidity and perfumes, and all exposure to fumes, odors, dusts, gases, soldering fluxes, solvents/cleaners and chemicals. Finally, he opined that the claimant uses a cane/walker and that she would be absent from work more than four days per month due to her impairments or treatment (8F/2-3).

In considering his opinion, it is noted that Dr. Manges has a longitudinal treatment history with the claimant, having treated her for approximately 10 years (Testimony; 2F; 7F; 8F; l0F; 12F; 18F). However, statements that the claimant is or is not able to work, or is or is not disabled, are not medical opinions, but are administrative findings dispositive of a case. Such issues are reserved to the Commissioner, pursuant to 20 CFR §404.1520b(c)(3) [sic] 416.920b(c)(3). Additionally, Dr. Manges's opinion is inconsistent with the evidence as whole (summarized above) as it relates to the claimant' s overall function and course of treatment for her physical impairments, which has been routine and conservative. Furthermore, he does not establish an adequate basis for his opinion and there is a lack of reference to supportive diagnostic testing, as with regard to the claimant's "shoulder pain." Dr. Manges 's opinion is also generally inconsistent with the diagnostic imaging and testing, the lack of significant physical examination findings, and the claimant's activities, which include sewing, walking 20-45 minutes per day, packing to move to a new apartment, and taking care of a 2-month-old baby, discussed in detail above. For the foregoing reasons, the undersigned gives this opinion little weight beyond what is reflected in the above residual functional capacity.

PageID.51-52.

Plaintiff points out that Dr. Manges based his restrictions, in part, on plaintiff's MRI findings (from November 20, 2017), which the doctor noted as "MRI shows disk bulging." PageID.644, 797-798, 824. The ALJ was aware of these findings, having noted in her review of the medical history that plaintiff had two MRI's in 2015:

A July 2015 MRI of the claimant's lumbar spine showed minor degenerative changes of the lower lumbar spine. More specifically, it showed a minor broad-based bulging disc at L4-L5 with more prominent bulging disc at L5-Sl, with minimal impact on the thecal sac and without significant stenosis. There was facet arthropathy at L4-L5 (5F/1-2). A November 2017 MRI of the claimant's lumbar spine showed multilevel degenerative changes, most severe at the L4-L5 and L5-Sl levels, but that had "minimally" progressed since the previous study (19F/14-15).

PageID.47.

Plaintiff contends that the MRI results constitute significant and objective evidence to support Dr. Manges RFC assessment. PageID.825. Based on this record, the Court concludes that the ALJ has not given good reasons for assigning Dr. Manges' opinion little weight. The doctor opined that plaintiff had significant restrictions due to the disk bulge shown on the MRI. In discounting the doctor's opinion, the ALJ does not address any particular medical record. Rather, she refers to the opinion as being "inconsistent with the evidence as whole (summarized above)", a "lack of reference to supportive diagnostic testing," and that it is "generally inconsistent with the diagnostic imaging and testing." PageID.52. In doing so, the ALJ fails to address whether the doctor's opinion was consistent with, or inconsistent with, the MRI results upon which it was based.

In this regard, Dr. Manges is the only medical professional to interpret plaintiff's 2015 MRI results.[2] "[T]he ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Commissioner of Social Security*, 531 Fed. Appx. 719, 728 (6th Cir. 2013). However, an ALJ is not a physician and cannot interpret raw medical data to formulate an RFC. *See Deskin v. Commissioner of Social Security*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) ("[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms") (citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999)). Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Manges opinion.

---

[2] The Court notes that the DDS evaluator, Robert Newhouse, M.D., reviewed plaintiff's filed in July and November, 2014, before plaintiff had her MRIs in July and November, 2015. *See* PageID.53. The ALJ did not cite any other physician who viewed the MRIs.

**B. The ALJ did not have substantial evidence to support her RFC finding.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

The thrust of plaintiff's claim is that the ALJ erred by finding that she could perform light exertional work (lifting up to 20 pounds) while also finding that plaintiff uses a cane for ambulation. PageID.44-45. Plaintiff relies on *Love v. Commissioner of Social Security*, 605 F. Supp. 2d 893 (W.D. Mich. 2009). In *Love*, the Court found a "fundamental illogic" to the ALJ's determination as to "how Plaintiff can *carry* 20 pounds if he requires a 'hand-held assistive device' to ambulate." *Love*, 605 F. Supp. 2d at 907 (emphasis in original). Because the ALJ did not address "the illogic of this conclusion," the Court found that the RFC determination was not supported by substantial evidence. *Id*. For the same reason, the Court concludes that the RFC determination here is not supported by substantial evidence (*i.e.*, the ALJ has failed to address how plaintiff, a person with COPD and asthma, can climb stairs, with a cane, carrying 20 pounds). Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate plaintiff's RFC.[3]

**C. The ALJ committed reversible error by improperly determining that Plaintiff's credibility was limited.**

Finally, plaintiff contends "the ALJ specifically found the Plaintiff to be less than completely credible (PageID.46)." PageID.826. This credibility finding does not appear as cited

---

[3] The Court notes that while plaintiff raises issues with respect to various severe impairments, she does not develop arguments to establish that the RFC fails to accommodate her impairments.

by plaintiff. This type of finding should not have appeared in the decision, because the ALJ was required to apply the procedure set forth in SSR 16-3p in her decision. SSR 16-3p eliminated term "credibility" from the disability evaluation process, stating in pertinent part:

> [W]e are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.

SSR 16-3p, 2017 WL 5180304 at *2 (Oct. 25, 2017) (republication with revisions). The ALJ was required to proceed under SSR 16-3p when she decided the case.[4] The record reflects that she did. *See* PageID.45 ("In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p."). Plaintiff's argument regarding a credibility finding, as raised in her brief, was not at issue. Accordingly, plaintiff's claim of error is denied.

## IV. CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate Dr. Manges' opinion with respect to plaintiff's physical limitations and re-evaluate plaintiff's RFC. A judgment consistent with this opinion will be issued forthwith.

Dated: March 30, 2020                                     /s/ Ray Kent
                                                          United States Magistrate Judge

---

[4] *See* SSR 16-3p (2017 WL 5180304 at *13, fn. 27) ("Our adjudicators will apply this ruling when we make determinations and decisions on or after March 28, 2016.").